IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 2:09cr090-WHA-13 |
| | ) | (WO) |
| LEE EARNEST BENSON | ) | |

## MEMORANDUM OPINION AND ORDER

### I.  FACTS AND PROCEDURAL HISTORY

This case is before the court on Defendant's Motion for Judgment of Acquittal.

Defendant, Lee Ernest Benson, was charged in the Superseding Indictment with

Conspiracy (Count 1), Possession and Utterance of a Forged Security (Count 16), Mail Fraud

(Count 22), and Aggravated Identity Theft (Count 23).  His two-day jury trial began on June 8,

2010, and Defendant was convicted on all counts.

After the Government closed its evidence, Defendant orally moved for a judgment of

acquittal as to all of these counts, which the court denied.  Defendant renewed his motion for

judgment of acquittal after the close of all the evidence.  The court orally denied the motion as to

Count 16 – the Count regarding the Possession and Utterance of Forged Security – but reserved

ruling on Counts 1, 22, and 23, pursuant to Rule 29(b), *Fed.R.Crim.P.*, and asked for briefs.  The

Government has filed a response to Defendant's Motion for Judgment of Acquittal (Doc. #335),

and Defendant has filed a Reply (Doc. #391).   The issues have now been fully briefed by the

parties, and, after careful consideration of arguments by both the Government and Defendant, the

court concludes that the Motion for Judgment of Acquittal is due to be GRANTED as to Count

23 and DENIED as to Count 1 and Count 16.

## II.  STANDARD OF REVIEW

A defendant carries a heavy burden in challenging the sufficiency of evidence supporting a conviction.  *United States v. McCarrick*, 294 F.3d 1286, 1290 (11th Cir. 2002).  The court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *United States v. Hernandez*, 433 F.3d 1328, 1335 (11th Cir. 2005).

The court views the evidence in the light most favorable to the government, making all inferences and credibility determinations in the government's favor.  *United States v. Majors*, 196 F.3d 1206, 1210 (11th Cir. 1999).  Accepting all reasonable inferences from the evidence which support the verdict, the court will uphold the convictions if a reasonable fact-finder could have reached a conclusion of guilt beyond a reasonable doubt.  *United States v. Lopez*, 985 F.2d 520, 524 (11th Cir. 1993).  It is not necessary for the government to disprove every reasonable hypothesis of innocence, as a jury is "free to choose among reasonable constructions of the evidence."  *United States v. Jones*, 913 F.2d 1552, 1557 (11th Cir. 1990).

## III.  DISCUSSION

### A.  Conspiracy to Utter and Possess Forged Securities (Count 1)

Count 1 charged a wide-spread conspiracy involving 19 forged drafts of Alfa Insurance Company.  Defendant contends that the evidence presented at trial was not sufficient to support a conviction on this count, because the Government failed to produce any evidence of communication between Defendant and the co-defendants.  In particular, Defendant points out that Federal Bureau of Investigation Agent Keith Baker testified that there is no evidence of communication between Defendant and any of the co-defendants.  In addition, Defendant points

out that Alfred Gardner, Defendant's co-employee, testified that he never saw Defendant engage in conversation or associate with Betty Smoke, a co-defendant in this case who was involved in the forged ALFA draft conspiracy.

To obtain a conviction for conspiracy under 18 U.S.C. § 371, "the government must show:  (1) the existence of an agreement to achieve an unlawful objective; (2) the defendant's knowing and voluntary participation in the conspiracy; and (3) the commission of an overt act in furtherance of the conspiracy."  *United States v. Hansen*, 262 F.3d 1217, 1246 (11th Cir. 2001) (citations and quotations omitted).

Viewing the evidence in the light most favorable to the Government, the court concludes that a reasonable jury could have found Defendant guilty of conspiring to possess or utter a forged security.  First, viewed in the Government's favor, the evidence established that Defendant negotiated a forged ALFA draft that was one of 19 such drafts stolen by Kristi McKeithen, distributed throughout the Montgomery area to various individuals, and negotiated. Because Defendant did not personally steal the ALFA drafts, a rational jury could have concluded that he agreed with at least one other person to possess or utter the draft.  Second, Danny Martin, the ALFA investigator; Alton Sizemore, the forensic accountant assisting Martin with the investigation into the stolen ALFA drafts; Debra Pearce, the former ALFA policyholder; and Tim Harris, the ALFA claims adjuster, all established that the ALFA draft that Defendant negotiated was forged.  Considering the clear evidence that the draft was forged, the jury could conclude that Defendant knew that he possessed a forged security and acted to further the objective of the conspiracy when he negotiated the ALFA draft through his bank account.  The jury also could reasonably have found that Defendant's deliberate ignorance and conscious

3

avoidance of the truth surrounding the forged ALFA draft was evidence of Defendant's intent to knowingly and voluntarily participate in the unlawful conspiracy. Third, the Government produced evidence that Defendant worked with Betty Smoke, a co-defendant in this case who was involved in the forged ALFA draft conspiracy and received funds from a forged ALFA draft, and who shared overlapping work areas and shifts with Defendant. Finally, the Government produced evidence of Defendant's dire financial condition and restitution obligations at the time he negotiated the forged ALFA draft, allowing the jury to conclude that Defendant had the motive to participate in an unlawful conspiracy to obtain funds to which he was not entitled. Viewing the totality of this evidence in the light most favorable to the Government, the court concludes that the evidence is sufficient to support Defendant's conviction under Count 1 for conspiring to utter and possess forged securities.

In addition to the evidence produced during the Government's case-in chief, Defendant elected to testify in this case, and the jury was entitled to reject his testimony and consider it as substantive evidence of his guilt. It is well-settled that

> where some corroborative evidence of guilt exists for the charged offense . . . and the defendant takes the stand in his own defense, the defendant's testimony, denying guilt, may establish, by itself, elements of the offense. This rule applies with special force where the elements to be proved for a conviction include highly subjective elements: for example, the defendant's intent or knowledge. . . .

*United States v. Brown*, 53 F.3d 312, 314-15 (11th Cir. 1995); *see also United States v. Vazquez*, 53 F.3d 1216, 1225-26 (11th Cir. 1995). Defendant testified at trial that he received the forged ALFA draft from "Robert" in the summer of 2008 and that he had negotiated the draft and check through his bank account. Defendant, however, could not remember Robert's last name, where

4

Robert lived, or the exact circumstances surrounding his receiving the forged ALFA draft. Defendant also could not explain how he received the forged ALFA draft from Robert in early summer of 2008, when the draft was dated August 2008. Finally, Defendant's testimony that he received the forged ALFA draft from Robert conflicted with the testimony of Alton Sizemore, who testified that he contacted Defendant early in the investigation of the ALFA matter, and Defendant told him the ALFA security was obtained by way of a lawn service contract with a woman in Wetumpka. Defendant testified that Sizemore's testimony was a lie. The jury, after observing Defendant's demeanor and analyzing his testimony in light of all the other evidence, was free to reject Defendant's testimony in its entirety and "conclude [that] the opposite of his testimony was true." *Brown*, 53 F.3d at 314-15. That is, the jury could reasonably conclude that Defendant's testimony that he received the ALFA draft from "Robert" was untruthful, and that, instead, he conspired with others to possess or utter the forged ALFA draft.

While the Government did not produce direct evidence of communication between Defendant and the co-defendants, "[i]t is unnecessary for the government to prove that each conspirator participated in all aspects of a conspiracy, knew each phase or every detail of the conspiracy, or knew all of the participants." *Hansen*, 262 F.3d at 1247. An agreement may be proved by circumstantial evidence, and "a common scheme or plan may be inferred from the conduct of the participants or from other circumstances." *Id.* Accordingly, the evidence supporting Defendant's conviction for conspiracy to possess or utter a forged security is sufficient to sustain the conviction.

**B.  Mail Fraud (Count 22)**

5

Count 22 involved a fraudulently obtained income tax refund check from the Georgia Department of Revenue, using the name and social security number of another person, with the check being mailed to the co-Defendant, Betty Smoke, and deposited by Benson. Defendant contends that the evidence presented at trial was not sufficient to support a conviction on this Count, because the Government failed to produce any evidence that Defendant used the mail, knew the mail was utilized, or had any reason to believe the mail was used.

To establish mail fraud under 18 U.S.C. § 1341, the government must prove beyond a reasonable doubt that the defendant (1) intentionally participated in a scheme or artifice to defraud another of money or property, and (2) uses or "causes" the use of the mails for the purpose of executing the scheme or artifice. *United States v. Ward*, 486 F.3d 1212, 1221-22 (11th Cir. 2007) (footnotes and citations omitted). Defendant argues that the Government failed to establish the second element, arguing that the Government failed to establish that Defendant used or caused the use of the mails for the purpose of executing the fraudulent scheme.

To the extent Defendant argues that the evidence supporting his mail fraud conviction is insufficient because he did not personally mail or receive mail as part of the scheme to defraud, that argument is clearly without merit. *See Ward*, 486 F.3d at 1223 (citing *United States v. Funt*, 896 F.2d 1288, 1294 (11th Cir. 1990) ("[T]he law is clear that one need not personally mail or receive mail in order to be liable under mail fraud so long as co-schemers do so."). To be sure, "[f]or nearly as long as mail fraud has been a federal crime, it has been the law in this Circuit, and in the former Fifth Circuit, that a defendant may be convicted of mail fraud without personally committing each and every element of mail fraud, so long as the defendant knowingly

6

and willfully joined the criminal scheme, and a co-schemer used the mails for the purpose of executing the scheme." *Ward*, 486 F.3d at 1222.

To the extent Defendant argues that the Government failed to establish that he knowingly and willfully joined the criminal scheme, this argument is also without merit.  Viewing the evidence in the light most favorable to the Government, a reasonable jury could conclude that Defendant knowingly and willfully participated in the unlawful scheme involving the fraudulent Georgia tax refund check, which was mailed to Betty Smoke's address.  As the court noted above in the context of the evidence regarding the conspiracy conviction, the Government produced evidence that Defendant worked with Betty Smoke, a co-defendant in this case who shared overlapping work areas and shifts with Defendant, and whose address received the mailing of the fraudulent Georgia tax refund check.  Defendant eventually deposited the refund check into his bank account.  Also, Tierra Cowley, the individual whose name and social security number appeared as payee on the refund check, testified that she had never worked in Georgia, authorized the filing of an income tax return in her name in Georgia, or spoke with Defendant.  Cowley also testified that her signature was forged on the back of the refund check.  Further, the Government submitted evidence that, if believed, established Defendant's financial hardship, which provided a motive to participate in a fraudulent scheme to obtain money and property to which he was not entitled.  Finally, as with the conspiracy count, the jury was entitled to reject Defendant's testimony and consider it as substantive evidence of his guilt.  *Brown*, 53 F.3d at 314-15.  Similar to his testimony regarding the forged ALFA draft, Defendant admitted that he possessed and negotiated the fraudulent Georgia tax refund check, but claimed that he also received that check from "Robert."  Defendant, however, could not remember Robert's last name or where he was,

7

many details of how Robert gave him the check, or explain his lack of documentation to support his story that he got the check from Robert in relation to yard work that Robert had done as part of Defendant's lawn care business. Viewing the totality of the evidence in the light most favorable to the Government, a reasonable jury could conclude that Defendant knowingly and voluntarily participated with Betty Smoke in the mail fraud scheme with the intent to defraud the Georgia Department of Revenue.

## C. Aggravated Identity Theft (Count 23)

Count 23 charged the Defendant with aggravated identity theft in regard to the Georgia tax refund check. Defendant contends that the evidence presented at trial was not sufficient to support a conviction on this Count.

The aggravated identify theft statute, 18 U.S.C. § 1028A(a)(1), provides as follows:

> (1) In general. – Whoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years.

The statute further provides that the two-year mandatory sentence must be consecutive to any term of imprisonment imposed for the predicate felony. 18 U.S.C. § 1028A(b)(2). So, if Defendant is found guilty of this offense, he will receive a mandatory two years of imprisonment in addition to whatever he is given for mail fraud.

As explained by the Eleventh Circuit, albeit in a different context, "[t]he unambiguous purpose of § 1028(A)(a)(1) is to provide for additional punishment for a defendant who, during the course of committing another felony offense, unlawfully uses a means of identification of another person. As such, the unlawful use of another person's identity when committing the

8

other offense 'aggravates' that other felony offense, warranting additional punishment." *United States v. Reiss*, 278 Fed. Appx. 991, 992 (11th Cir. 2008).

The Supreme Court has recently discussed the "knowledge" requirement of this statute in *Flores-Figueroa v. United States*, 556 U.S. ___ , 129 S. Ct. 1886 (2009).  Although that case involved use of counterfeit social security and alien registration cards, the language regarding the requirement of personal knowledge to satisfy the requirement of the word "knowingly" applies with equal force to this case.  Specifically, the Court said:

> A federal criminal statute forbidding '[a]ggravated identity theft' imposes a mandatory consecutive 2-year prison term upon individuals convicted of certain other crimes *if*, during (or in relation to) the commission of those other crimes, the offender '*knowingly* transfers, possesses, or uses, without lawful authority, *a means of identification of another person*.' 18 U.S.C. § 1028A(a)(1) (emphasis in original).
> . . .
> The statutory provision in question references a set of predicate crimes, including, [mail fraud] . . . . § 1028A(c).  It then provides that if any person who commits any of those other crimes (in doing so) 'knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person,' the judge must add two years' imprisonment to the offender's underlying sentence. § 1028A(a)(1).

*Flores-Figueroa*, 129 S. Ct. at 1889.

In this case, Defendant was convicted of mail fraud, which is an enumerated predicate felony supporting the aggravated identity theft conviction.   The Government bases its case for aggravated identify theft on the fact that the Defendant knowingly possessed the fraudulently obtained refund check and deposited it in his bank account.  The Government contends that sufficient evidence supports each of the elements of aggravated identity theft because Defendant knowingly possessed and negotiated Tierra Cowley's Georgia tax refund check without her

permission.  In particular, the Government contends that "[t]he refund check alone sufficiently proves Defendant's knowledge of using a means of identification which was not his own as Cowley's name and social security number were prominently displayed on the face of the refund check."  (Doc. #335, Gov. Br. at 11.)[1]  The Government's contention thus raises the issue of whether merely possessing and negotiating this fraudulently obtained check constitutes the knowing use of another person's "means of identification" during or in relation to the underlying felony of mail fraud.

18 U.S.C. § 1028(d) contains definitions of terms also used in § 1028A.  The term "means of identification" is defined as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual," and includes four categories of information that satisfy this definition.  18 U.S.C. § 1028(d)(7).

The Government relies on 18 U.S.C. § 1028(d)(7)(A), which provides, in pertinent part, that the term "means of identification" includes any name or social security number.  Thus, the Government argues that the identifying information listed on the check, Cowley's name and social security number, is specifically included as "means of identification" under the statute, and that endorsing and depositing the check is sufficient to establish its knowing use by Defendant during or in relation to the mail fraud.

While the court has held that there was sufficient circumstantial evidence to prove beyond a reasonable doubt that Benson was guilty of mail fraud, the same evidence that sustains that conviction is not sufficient to convict on the charged aggravating offense.  The evidence sufficiently showed that Benson knowingly joined a scheme to cash a fraudulent check, and as

---

[1] Actually, the check only bore the last four digits of a social security number.

noted earlier, that was enough to convict for mail fraud in the absence of evidence establishing Defendant's personal involvement in obtaining the check through the mail, since the evidence showed that a co-schemer used the mail to obtain the check. Not so, however, for aggravated identity theft. Here, under the reasoning of *Flores-Figueroa v. United States*, the evidence must show that Benson, himself, knowingly committed each element of this offense in the course of committing the offense of mail fraud. The evidence, viewed in the light most favorable to the prosecution, was not sufficient to establish that Defendant himself knowingly used the name and social security number to obtain the check through the mail. The court finds that, under the reasoning of *Flores-Figueroa*, such personal knowledge and personal involvement in obtaining the check is necessary to prove aggravation, so as to justify the severe mandatory consecutive sentence, even though it is not necessary to convict of the underlying offense.

The evidence in this case showed that Benson received the check from someone, that the check bore the name of Tierra Cowley and the last four digits of her social security number, that the check had been endorsed in Ms. Cowley's name by someone other than Ms. Cowley, that Benson endorsed his own name to the check himself and deposited it in the bank in his account, and that he later withdrew most of it. There was no evidence that Benson forged the endorsement of Ms. Cowley. There was no evidence of Benson's personal involvement in using Ms. Cowley's name and social security number to obtain the fraudulent refund check through the mail, or even that he ever knew Ms. Cowley's name or entire social security number before he received the check.

Therefore, the court finds the evidence, viewed in the light most favorable to the prosecution, to be insufficient to sustain a finding beyond a reasonable doubt that Benson's

depositing of the check constituted the "knowing" transfer, possession, or use of the "means of identification of another person," without lawful authority, "during and in relation to" the offense of mail fraud.[2]  The Defendant is entitled to a directed verdict of acquittal on that Count.

## IV.  CONCLUSION

For the reasons stated above, Defendant's Motion for Judgment of Acquittal is due to be and is hereby ORDERED GRANTED in part and DENIED in part as follows:

(1)  The Motion for Judgment of Acquittal is GRANTED as to Count 23, and the Defendant is ACQUITTED as to that Count.

(2)  The Motion for Judgment of Acquittal is DENIED as to Counts 1 and 22.

(3)  A sentencing date will be set by separate order.

---

[2] The court is aware of the Eleventh Circuit's unpublished decision in *United States v. Cook*, 336 Fed. Appx. 875 (11th Cir. 2009), but finds that decision not to be in conflict with this court's opinion herein.  In *Cook*, the sole issue raised was whether the forged signatures of a real person with authority to draw on a corporate account, on known fraudulent corporate checks possessed and transported by the Defendant during a counterfeit check fraud conspiracy, constituted such possession and transport of a means of identification of "another person."  The court held that it did, holding that the district court did not commit plain error in refusing to draw a distinction between a personal check and a corporate check.

The court also finds two non-binding cases from other circuits to be distinguished from this case, and not persuasive here, particularly in light of the later *Flores-Figueroa* decision.  *See United States v. Blixt*, 548 F.3d 882, 886 (9th Cir. 2008) (holding that forging another's signatures to checks constituted the use of a person's name and thus qualified as a "means of identification" in aggravation of the underlying offense; the evidence was that this was done by the defendant personally while knowingly committing the underlying offense of mail fraud.); *United States v. Johnson*, 261 Fed. Appx. 611 (4th Cir. 2008) (rejecting Defendant's argument that aggravated identify theft statute was limited to theft involving natural persons, not companies, and holding that knowing use of checks drawn on Gail Brinn Wilkins, Incorporated accounts with the forged signature of Gail Brinn Wilkins, while knowingly and personally committing the underlying offenses of possession of counterfeit / forged securities and possession of stolen mail, was sufficient to convict.").

Done this 12th day of August, 2010.

/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE